# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ARNOLD L. PRITT and RUTH A. PRITT,<br><br>        Plaintiffs,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION (as successor by merger to BUFFALO PUMPS, INC.);<br>GENERAL ELECTRIC COMPANY;<br>JOHN CRANE INC.;<br>VIACOM CBS INC. f/k/a CBS CORPORATION f/k/a VIACOM, INC., Successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION, individually and as Successor-in-Interest to BF STURTEVANT CO.,<br>        Defendants. | Civil Action No. 1:20-cv-12270 |

## DEFENDANT JOHN CRANE INC.'S
## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant John Crane Inc. ("JCI"), by counsel and pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446, hereby removes the above-captioned action from the Superior Court of Middlesex County, Massachusetts to the United States District Court for the District of Massachusetts. JCI provides the following short and plain statement of the grounds for removal:

## BACKGROUND

1. On November 18, 2020, Plaintiffs Arnold L. Pritt and Ruth A. Pritt ("Plaintiffs") filed a complaint captioned *Arnold L. Pritt, et al. v. Air & Liquid Systems Corporation, et al.*, Middlesex County Superior Court Civil Case No. 20-2811, against JCI and three other Defendants. True and

correct copies of all process, pleadings, and orders with which JCI has been served are attached collectively as **Exhibit A**. JCI's agent for service of process was hand served with the Summons and Complaint on November 24, 2020.

2. Plaintiffs' Complaint alleges Mr. Pritt developed mesothelioma as a result of exposure to a wide variety of asbestos-containing products while serving (from 1961 to 1964) in the United States Navy while aboard the *USS Purdy* at (among other places) the Boston Naval Shipyard in Massachusetts. (*See* Compl. at 9.) With respect to JCI, Plaintiffs allege Mr. Pritt was exposed to asbestos fibers from asbestos-containing products manufactured, distributed, and sold by JCI. (*Id.* at 2C, 8, 11.)

3. Plaintiffs' Complaint sounds in negligence and breach of warranty, with each cause of action generally relying upon shared theories and incorporating common allegations. (*Id.* at 12, 19, 27.) Plaintiffs allege that Defendants' products had "dangerous characteristics [and] properties" that created "dangers [and] hazards" – language that appears to assert claims for defective design based upon an inherently dangerous design. (*Id.* at 15, 18.) This theory is further expanded upon in Plaintiffs' claim for breach of warranties, where Plaintiffs allege that Defendants' asbestos-containing products were not "safe, suitable, or fit for their ordinary or particular purposes." (*Id.* at 24.) However, Plaintiffs disclaim any "theory of defective design[.]" (*Id.* at 16.)

4. Instead, Plaintiffs allege only a failure-to-warn theory of liability, claiming Defendants "fail[ed] to warn [] of the dangers, characteristics, and potentialities of their asbestos-containing products[.]" (*Id.* at 15.) The Complaint continues to allege Defendants failed to warn "of the dangers to which [Mr. Pritt] was exposed" and failed to "exercise reasonable care to warn" Mr. Pritt of the appropriate protective measures to use with Defendants' products. (*Id.*)

5. In sum, Plaintiff seeks to hold JCI liable for asbestos-containing products it sold to the Navy (valve and pump packing and, at times, compressed sheet gasket material) without placing a warning on or with these products. Because of JCI's defense that it is immune from such claims under the government contractor defense, Plaintiffs' suit against JCI is removable to this Court.

6. This is true despite Plaintiffs' attempt to "disclaim any cause of action or claim for recovery that could give rise to federal subject matter jurisdiction." (*Id.* at 4.) "[T]he majority of federal courts have found that jurisdictional disclaimers in complaints . . . are ineffective to avoid federal officer removal jurisdiction." *Neal v. Avondale Indus.*, 2020 U.S. Dist. LEXIS 194297 at *40 (M.D. La. Sept. 25, 2020) (quoting *Dougherty v. A.O. Smith Corp.*, 2014 U.S. Dist. LEXIS 96290 at *4 (D. Del. July 16, 2014), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 125302 (D. Del. Sept. 8, 2014)). This has likewise been the conclusion reached by the Multi-District Litigation Court overseeing the nation's federal asbestos docket. *Barnes v. Various Defendants (In re Asbestos Prods. Liab. Litig.)*, 770 F. Supp. 2d 736, 740-42 (E.D. Pa. 2011); *accord Shepherd v. Air & Liquid Sys. Corp.*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *64 (D.R.I. Nov. 20, 2012); (*O'Connell v. Foster Wheeler Energy Corp*., 544 F. Supp. 2d 51, 54 n.6 (D. Mass. 2008).

7. Thus, Plaintiffs' invalid disclaimer attempt aside, to the extent Plaintiffs marshal any evidence that Mr. Pritt encountered a product supplied by JCI, any such products were in conformance with reasonably precise military specifications covering every aspect of the composition, appearance, technical performance, and testing requirements of these products.

8. The only JCI sheet gasket material ever qualified to be sold to the Navy was style 2150. This compressed asbestos-containing sheet gasket material was governed by Military Specification Mil-A-17472 (the "Mil-Spec"). The Mil-Spec expressly required gasket suppliers like JCI to use "compressed asbestos sheet … made of asbestos fiber." (**Ex. B,** Mil-A-17472A ¶ 3.2, dated

3

January 4, 1963.)[1] The Navy went so far as to specify the type and amount of asbestos, requiring the use of chrysotile asbestos that "shall contain not less than 12 percent water of crystallization" and "not less than 70 percent by weight, of asbestos fiber[.]" (*Id.* at ¶ 3.2.1, 3.4.) Thus, in order to supply comply with the Navy's specification for this gasket material, JCI was required to supply asbestos-containing gaskets.

9. Also included in the Mil-Spec are requirements for all writings and markings that are required and permitted to appear on the face of the product. Specifically, Paragraph 3.11, entitled "Branding," provides:

> Each square foot of the asbestos sheet shall be plainly marked with the manufacturer's name, brand identification, and symbol 2150.

(Ex. B ¶ 3.11.) No other writings or markings – including warnings of any kind – were permitted on the face of the gasket material. Likewise, Mil-A-17472A did not provide for, and thus did not allow, any asbestos warnings on the packaging or containers of any of the products supplied.

10. The level of oversight, control, testing, and detailed specifications described above for gasket material applied with equal force to the packing products sold by JCI to the Navy. Indeed, Mil-Specs for packing during the relevant time period contained precise language covering every aspect of the composition (expressly including asbestos), construction, size, performance testing, temperature rating, pressure rating, packaging, marking, and other characteristics of the particular style of packing at issue. (**Ex. H,** Mil-P-17303C, dated Oct. 14, 1955.)[2] For example, Mil-Spec

---

[1] Exhibit B was initially implemented on February 12, 1953 as MIL-A-17472. (**Ex. C**.) It was subsequently modified on March 27, 1953 (no significant changes) (**Ex. D**); April 21, 1961 (modifying the qualification testing process) (**Ex. E**); January 4, 1963 which is Exhibit B; and May 22, 1964 (**Ex. F**.) The Mil-Spec was cancelled on September 5, 1974. (**Ex. G**.)

[2] Between 1955 and 1965, there were five minor amendments issued to Mil-P-17303C that are not relevant here.

4

Mil-P-17303C expressly mandated the use of asbestos in certain varieties of packing, including Navy Symbol No. 1108 packing products. (*Id.* ¶ 3.9.2.)  Further, Mil-Spec MIL-P-17303C included requirements for all writings and markings that are to appear on the product (*Id.* ¶ 5.3.) No other writings or markings – including warnings of any kind – were permitted.  Various styles of JCI packing passed the detailed qualification process, met applicable Mil-Specs, and were included on QPLs.  (*E.g.,* Military Qualified Products List of Products Qualified Under Military Specification MIL-P-17303C – January 13, 1961, attached as **Exhibit I**.)

11. The Navy observed a comprehensive program of inspecting products, both at the manufacturing facility – including JCI's plant – as well as upon receipt by the Navy.  The Navy's inspections program specifically included examination for proper labeling and markings on products.  JCI never had any product returned or rejected by the Navy either because it contained asbestos or because it failed to include an asbestos warning on or with the product.  Likewise, JCI never received any notice or information from the Navy, during the relevant time period, that the inclusion of asbestos in products or the failure to place asbestos warnings on or with the product was a violation of this Mil-Spec.  The Navy never ceased its business relationship with JCI, nor withheld payment from JCI, for supplying products with asbestos or for not including warnings.

12. In sum, at all times during the relevant time period, JCI complied with the reasonably precise specifications set forth in the Mil-Specs, including the requirement to use asbestos, brand the sheet gasket material as instructed with no unauthorized markings or warnings, and not include asbestos warnings on any packaging.

13. At all times relevant to Plaintiffs' claims in this lawsuit, the United States Government, including the United States Navy, possessed knowledge regarding the dangers of asbestos that was superior to that of its equipment and product suppliers, including JCI.

## **FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C. § 1442(a)(1)**

14. As an initial matter, the law governing removal of case for acts done at the direction of federal officers provides that a notice of removal must be filed within 30 days of a defendant's receipt of the initial pleading.

15. This Notice of Removal under 28 U.S.C. § 1442(a)(1), filed within thirty days after JCI was served with the Complaint on November 24, 2020, is hereby timely under 28 U.S.C. § 1446(b)(1). The Complaint seeks to recover for, among other things, JCI's failure to place a warning on the face of the gasket material it supplied or on packaging of products it supplied and JCI's "defective" or dangerous design. These claims fall squarely within the requirements of the Mil-Specs made applicable by the Navy to such products before being sold to the Navy for use in advancing its missions, JCI is entitled to assert the federal officer defense.

16. Removal is proper under 28 U.S.C. 1442(a)(1) when facts are disclosed establishing that: (1) the removing defendant is a person within the meaning of the statute; (2) it performed the complained of action at the direction of a federal officer and under color of federal office; (3) there is a causal nexus between the defendant's actions and the plaintiff's claims; and (4) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 123-35 (1989); *Papp v. Fore-Kast Sales, Inc.*, 842 F.3d 805, 812 (3d Cir. 2016); *Mannix v. CBS Corp.,* 2019 U.S. Dist. LEXIS 4653, at *7 (D.R.I. Jan. 9, 2019);. All elements are present here.

17. *First*, as a corporation, JCI is a "person" for purposes of 28 U.S.C. § 1442(a)(1). *Mannix,* 2019 U.S. Dist. LEXIS 4653, at *13 ("CBS, as a corporation, is a 'person' under the statute"); *Papp*, 842 F.3d at 812.

18. *Second*, JCI supplied products at the direction of a federal officer, the United States Government, and under color of federal office. The products at issue were supplied pursuant to

6

military procurement contracts with the United States Government and in compliance with detailed design, labeling, and testing specifications issued and/or approved by the Government. These specifications dictated the performance and material composition of the products and the writings and markings required to be placed on the material.

19. The design, manufacture, labeling, testing, and shipment of such material were subject to close, detailed, and ongoing supervision and control of the United States Government and its officers. The Government exercised discretion and approval authority over the products supplied by JCI; JCI complied with the United States Government's specifications, including the mandate to use a specified concentration of chrysotile asbestos, the selection of certain writings and markings placed on or with the products and the testing required by the U.S. government; and, to the extent of any alleged hazards associated with the products, there were no dangers known to JCI that were not known to the United States. *O'Connell v. Foster Wheeler Energy Corp.,* 544 F. Supp. 2d 51, 57 (D. Mass. 2008) ("the Navy's knowledge of the dangers of asbestos on board its ships was far more advanced than anything that would have been known to a contractor"); *Papp*, 842 F.3d at 813.

20. JCI's supply of gasket and packing material under the control, direction, specification, and supervision of the Government thus satisfies the "acting under" requirement. The "acting under" requirement, like federal officer removal generally, "is 'broad' and is to be 'liberally construe[d]' in favor of the entity seeking removal.'" *Sawyer v. Foster Wheeler LLC,* 860 F.3d 249, 255 (4th Cir. 2017) (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)); *Shepherd*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *62 ("policy favoring federal officer removal 'should not be frustrated by a narrow, grudging interpretation'") (quoting *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969)). Numerous federal courts have held, for

purposes of federal officer removal, that military contractors were "acting under a federal officer" in relation to the design, manufacture, and supply of equipment to the United States Government. *Shepherd*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *82; *O'Connell*, 544 F. Supp. 2d at 58; *Mannix*, No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *13 *Papp*, 842 F.3d at 813 (stating that Boeing "easily satisfie[d] the 'acting under' requirement" where plaintiff's allegations were "directed at actions Boeing took while working under a federal contract to produce an item the Government needed, to wit, a military aircraft, and that the Government otherwise would have been forced to produce on its own"); *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 784 (E.D. Pa. 2010).

21. Indeed, JCI could not change the design or provide additional language – including warning labels – on or with the products without prior Government authorization. Certainly, JCI could not have changed the design to provide a non-asbestos containing product. Moreover, not only did JCI's acquisition of Government approval for any design change require strict compliance with the Government's formal, detailed change process procedures, the Government retained absolute authority at all times to accept, reject, or modify any aspect of a military government contractor's requested change proposal.

22. *Third*, there is a causal nexus between JCI's alleged actions in supplying products and Plaintiffs' alleged injury in that Plaintiffs claim Mr. Pritt's mesothelioma was caused by JCI's inclusion of chrysotile asbestos in products and alleged failure to warn of the potential hazards of asbestos-containing products. To meet this requirement, "there need be only 'a connection or association between the act in question and the federal office.'" *Sawyer*, 860 F.3d at 258 (quoting *Papp*, 842 F.3d at 813); *Shepherd*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *64 ("there is a causal connection between the acts taken under federal direction and a plaintiff's claim(s) against

it"). If a defendant is sued for asbestos-related injuries purportedly arising from or relating to equipment that it supplied to the United States Government under the Government's detailed direction and control, that defendant has been sued in relation to conduct under color of its federal office, satisfying the "causal nexus" requirement. *See id.*; *see also Cuomo v. Crane Co.*, 771 F.3d 113, 117 (2d Cir. 2014); *Ruppel*, 701 F.3d 1181; *Burdett v. CBS Corp.*, No. CV 17-04581-AB (SKx), 2017 U.S. Dist. LEXIS 210551, at *10 (C.D. Cal. Dec. 20, 2017) (finding causal nexus where "warnings that accompanied its products were subject to government specifications and requirements, not merely government approval").

23. *Fourth*, JCI asserts a colorable federal defense, namely the "government contractor" defense set forth in *Boyle v. United Technologies, Inc.*, 487 U.S. 500 (1988) and its progeny. Under *Boyle*, a defendant must show that: (1) it designed, manufactured, and supplied the product at issue (including accompanying markings and manuals) according to "reasonably precise specifications" promulgated or adopted by the United States Government; (2) the equipment, markings, and manuals conformed with those specifications; and (3) at all relevant times, the United States Government had as much knowledge of the potential hazard as the defendant. 487 U.S. at 512; *O'Connell*, 544 F. Supp. 2d at 57 ("the Navy's knowledge of the dangers of asbestos on board its ships was far more advanced than anything that would have been known to a contractor like Buffalo Pumps"); *Mannix,* No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *14 ("the Navy knew of all the hazards associated with asbestos as early as 1922"); *Sawyer*, 860 F.3d at 255-56; *Ripley*, 841 F.3d at 210.

24. To assert a colorable defense, a defendant is required only to identify facts which, viewed in the light most favorable to the defendant, would establish a defense under *Boyle* at trial, and "'need not win his case before he can have it removed.'" *Papp*, 842 F.3d at 815 (quoting

*Willingham v. Morgan*, 395 U.S. 402, 407(1969)). "For removal purposes, the defendant's showing need only be plausible; not necessarily conclusive of the issue." *O'Connell*, 544 F. Supp. 2d at 54. "'Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection.'" *Sawyer*, 860 F.3d at 258 (quoting *Jefferson County v. Acker*, 527 U.S. 423, 432 (1999)).

25. Under identified facts similar to those here, federal courts consistently have denied motions to remand state law claims for failure to warn that were removed under the government contractor defense. *See, e.g.*, *Sawyer*, 860 F.3d at 259 (reversing district court's remand); *Ripley*, 841 F.3d at 211 (same); *Shepherd*, 2012 U.S. Dist. LEXIS 166735, at *86 (denying motion to remand); *O'Connell*, 544 F. Supp. 2d at 58 (same); *Mannix,* No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *15 (same); *Rhodes*, 210 F. Supp. 3d at 786; *Citrano v. John Crane-Houdaille, Inc.*, 1 F. Supp. 3d 459 (E.D. Va. 2014); *Mitchell*, 2004 U.S. Dist. LEXIS 29504, at *14 (denying motion to remand); *Pack*, 838 F. Supp. at 1104 (same); *Kleeman v. McDonnell Douglas Corp.*, 890 F.2d 698, 704 (4th Cir. 1989) (same); *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 353 (4th Cir. 1998) (affirming summary judgment for defendant on government contractor defense); *Papp*, 842 F.3d at 813 (reversing district court's remand).

26. The government contractor defense applies to Plaintiffs' failure-to-warn claim and strict liability/inherently defective design claim in that: (1) the Government approved specifications for gaskets and packing; (2) JCI complied with these specifications, including the asbestos content and markings/labeling; and (3) there were no health hazards associated with asbestos generally, or with the asbestos-containing material at issue here specifically, of which JCI was aware and the Government was not. *Shepherd*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *85; *O'Connell*,

544 F. Supp. 2d at 57; *Mannix,* No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *14-15; *Sawyer*, 860 F.3d at 256; *Mullinex v. Air & Liquid Sys. Corp.*, 2018 U.S. Dist. LEXIS 221669, at *65 (E.D. Va. Dec. 6, 2018) ("the government knew at least as much about the dangers of asbestos as did contractors such as JCI"). This Court has previously recognized that *Boyle* applies to failure to warn cases. *O'Connell*, 544 F. Supp. 2d at 54 n.7. In doing so, the Massachusetts District Court has found itself in the good company of the Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, and Eleventh Circuits, all of which have applied *Boyle*'s government contractor defense in failure-to-warn cases. *Papp*, 842 F.3d at 814 & n.6 (collecting cases); *Ripley*, 841 F.3d at 211 ("the rationales identified in *Boyle* remain applicable in failure to warn cases." (holding that government contractor defense is available in failure to warn cases); *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir. 1998) (stating that decisions applying government contractor defense in failure to warn cases were "reasoned soundly").

27. The government contractor defense is satisfied here because: (1) the design specifications, including the asbestos content and all writings and markings on or with the sheet gasket and packing materials, were issued and/or approved by the Government; (2) the products did, in fact, conform to those specifications; and (3) to the extent that asbestos was believed, at the time, to be a hazardous material, the Government's knowledge of such hazards was at all times superior to that of JCI. *Shepherd*, No. 12-143L, 2012 U.S. Dist. LEXIS 166735, at *85; *O'Connell*, 544 F. Supp. 2d at 57; *Mannix,* No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *14-15; *Mullinex,* No. 4: 18cv33, 2018 U.S. Dist. LEXIS 221669, at *65; *Citrano*, 1 F. Supp. 3d at 467-69; *Hicks v. Boeing*, 2014 WL 1051748 (D. Del. Mar. 17, 2014); *Fung v. Abex Corp.*, 816 F. Supp. 569, 573 (N.D. Cal. 1992); *Mitchell*, 2004 U.S. Dist. LEXIS 29504, at *12-13.

28. Moreover, the government contractor defense need apply to only one of the claims in a complaint to allow removal of the entire case under the federal officer removal statute. *Sawyer*, 860 F.3d at 257.

29. JCI also is entitled to federal officer removal under 28 U.S.C. § 1442(a)(1) based on the separate defense of derivative sovereign immunity set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18, 40 (1940).  In *Yearsley*, the Court established that a government contractor acting at the direction and authorization of a government officer is immune from suit based on performance of the government contract.  *Yearsley* is satisfied here because the acts complained of were performed at the direction of government officers acting under government authorization, and if the Government had performed those acts directly, it would be immune from suit.

## JURISDICTION

30. Removal of this action is proper under 28 U.S.C. §§1331, 1442.  Consistent with the short and plain statement of the law and facts set forth above, the federal district courts have original jurisdiction over the subject matter of this suit under 28 U.S.C. § 1442(a)(1), because JCI was acting under an officer or agency of the United States Government in relation to any claims asserted against JCI and JCI can state at least a colorable defense under federal law to any such claims.  *See O'Connell,* 544 F. Supp. 2d at 58; *Mannix,* No. 18-558 WES, 2019 U.S. Dist. LEXIS 4653, at *13; *Sawyer*, 860 F.3d at 254; *Papp*, 842 F.3d at 812-15; *Ruppel*, 701 F.3d at 1179-86.

31. The "policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)" *O'Connell*, 544 F. Supp. 2d at 53 n.5 (citation omitted). "'Unlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum.'"  *Papp*, 842 F.3d at 811 (quoting *Defender Ass'n*, 790 F.3d at 466-67); *see also Willingham*, 395 U.S. at 406 (noting that scope of federal officer removal statute "is not narrow or limited").

## **PROCEDURAL COMPLIANCE**

32. Written notice of the filing of this Notice of Removal is being given promptly to Plaintiffs by service hereof, and a copy of the Notice of Removal is being filed promptly with the Superior Court for the County of Middlesex, Massachusetts, as required by 28 U.S.C. § 1446(d).  A copy of the notice that will be contemporaneously filed in state court (without exhibits) is attached as **Exhibit J.**

33. Because JCI satisfies the requirements for removal under 28 U.S.C. § 1442(a)(1), it is entitled to remove this action without obtaining the consent of other Defendants.  *Warters v. Mass. DOT,* Civil Action No. 16-11892-FDS, 2016 U.S. Dist. LEXIS 174992, at *5 (D. Mass. Dec. 19, 2016) ("it is settled that the filing of a petition for removal by a single federal officer removes the entire case to the federal court") (quoting *Fowler v. S. Bell Tel. & Tel. Co.,* 343 F.2d 150, 152 (5th Cir. 1965); *Durham*, 445 F.3d at 1253; *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998).

34. As required by 28 U.S.C. § 1446(a), true and correct copies of the process and pleadings served upon JCI are being filed with this Notice of Removal as Exhibit A, above.

35. Should Plaintiffs move to remand this case, JCI respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

36. JCI reserves all of its defenses.

        Respectfully submitted,
        Defendant,
        John Crane, Inc.
        By its attorneys,

        */s/ Jonathan F. Tabasky*
        Jonathan F. Tabasky, BBO #631387
        Christopher P. Haze, BBO #703486
        MANNING GROSS + MASSENBURG LLP
        125 High Street, 6th Floor
        Oliver Street Tower
        Boston, MA  02110-3536
        Telephone: (617) 670-8800
        Facsimile: (617) 670-8801
        Email: jtabasky@mgmlaw.com
        Email: chaze@mgmlaw.com

Dated:  December 22, 2020

## CERTIFICATE OF SERVICE

     I, Jonathan F. Tabasky, counsel for Defendant, John Crane Inc., hereby certify that a true and accurate copy of the above document was filed electronically on the Court's CM/ECF system on December 22, 2020.  Notice of this filing will be sent to all counsel of record via the Court's ECF system.

        */s/ Jonathan F. Tabasky*
        Jonathan F. Tabasky