**United States District Court**
**District of Massachusetts**

```
_____
                                 )
Arnold L. Pritt and              )
Ruth A. Pritt,                   )
                                 )
          Plaintiffs,            )
                                 )    Civil Action No.
          v.                     )    20-12270-NMG
                                 )
John Crane Inc.,                 )
                                 )
          Defendant.             )
_____)
```

**MEMORANDUM & ORDER**

This case arises from product liability claims brought by Arnold Pritt and his wife Ruth Pritt ("the Pritts" or "plaintiffs") against John Crane Inc. ("John Crane" or "defendant"). Arnold Pritt was exposed to asbestos contained in John Crane's products when he served in the United States Navy. Mr. Pritt was diagnosed with malignant mesothelioma, a cancer caused by asbestos exposure, in September, 2019.

Before the Court is defendant's motion for summary judgment. For the reasons that follow, that motion will be denied.

- 1 -

I.   **Background**

   A.   **Fact History**

   Plaintiff Arnold Pritt served in the United States Navy aboard the USS Purdy as a machinist mate from December 1961 to August 1964.  He alleges that during that time, he was exposed to airborne asbestos particles from packing and gaskets manufactured by John Crane, Inc.  Mr. Pritt is 79 years old and suffers from malignant mesothelioma, a fatal disease caused by exposure to asbestos.

   While he served in the Navy, Mr. Pritt installed compressed asbestos sheet gaskets and removed and replaced John Crane valve and pump packing in the engine room of the USS Purdy.  Gaskets are used as flanges between pipes and equipment to create a seal against leaking, pressure and contamination.  They were produced in sheets and pre-cut.  The subject packing is a rope-like material used for a similar purpose in pump shafts and valve stems.  It was available in various lengths or pre-cut rings. The gaskets and packing contained various binders, greases and adhesives, including asbestos.  Both of plaintiff's tasks exposed him to the asbestos dust contained in John Crane's products.  Defendant's gaskets and packing were not labeled with warnings about the dangers of asbestos.

- 2 -

John Crane manufactured the gaskets and packing in accordance with military standards ("MIL-STD") and military specifications ("MIL-SPEC") promulgated by the Navy.  Those written requirements explained how to label products and what components the products should contain, among other details. MIL-STD-129, titled "Marking for Shipment and Storage," provides guidance for the marking of military supplies and equipment for shipment and storage.  The MIL-SPECS for each product are more detailed but often refer to MIL-STD-129 by incorporation.

During the years that Mr. Pritt was aboard the USS Purdy, John Crane sold a gasket called symbol 2150 to the Navy.  The symbol 2150 gasket was titled "Asbestos Sheet, Compressed (Gasket Material)" and the MIL-SPEC for that product was MIL-A-17472 (original issue and issues A and B).  MIL-A-17472 incorporates by reference the requirements in MIL-STD-129.  It states that the gasket should be marked with the manufacturer's name, brand identification and symbol 2150 and that the compressed asbestos sheet shall be made of asbestos fiber, natural or synthetic rubber or a mixture of the two and suitable mineral fillers.

During Mr. Pritt's service in the Navy, the valve and pump packing was described in MIL-P-17303C which was entitled "Packing Materials, Plastic Metallic and Plastic Nonmetallic."

That regulation also referred prospective manufacturers, such as John Crane, to MIL-STD-129 for guidance on marking the packing. The plastic non-metallic packing requirements listed asbestos as a component.

### B.   Procedural History

The Pritts filed suit in the Massachusetts Superior Court for Middlesex County in November, 2020 against John Crane, Air & Liquid Systems Corporation, General Electric Company and Viacom CBS Inc.  John Crane removed the case to this Court in December, 2020.  Plaintiffs then filed an amended complaint in April, 2021, solely against John Crane.  The Pritts' amended complaint brings claims for negligence (Count I), breach of express and implied warranties (Count II) and loss of consortium on behalf of Mrs. Pritt (Count III).

Both parties have retained multiple experts, who have submitted reports and been deposed.  In May, 2022, John Crane moved for summary judgment against the Pritts.

## II.   **Motion for Summary Judgment**

### A.   Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d

816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc.,
895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving
party to show, through the pleadings, discovery and affidavits,
"that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).

A fact is material if it "might affect the outcome of the
suit under the governing law . . . ." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact
in dispute "is such that a reasonable jury could return a
verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts
to the non-moving party to set forth specific facts showing that
there is a genuine, triable issue. Celotex Corp. v. Catrett, 477
U.S. 317, 324 (1986).  The Court must view the entire record in
the light most favorable to the non-moving party and make all
reasonable inferences in that party's favor. O'Connor v.
Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is
warranted if, after viewing the record in the non-moving party's
favor, the Court determines that no genuine issue of material
fact exists and that the moving party is entitled to judgment as
a matter of law.

**B.    Government Contractor Defense**

Plaintiffs have stated claims for failure to warn and design defect.  John Crane asserts that both such claims are barred by the government contractor defense outlined in <u>Boyle</u> v. <u>United Technologies Corp.</u>, 487 U.S. 500, 512 (1988).  <u>Boyle</u> promulgated a three-prong test for design defect cases and the First Circuit Court of Appeals, among other circuit courts, has applied that test to failure to warn cases. <u>See</u> <u>Moore</u> v. <u>Elec. Boat Corp.</u>, 25 F.4th 30, 37 (1st Cir. 2022).

Because the government contractor defense is an affirmative defense upon which John Crane bears the burden of proof at trial, it must show "the absence of a genuine issue of material fact as to all three (3) prongs of the <u>Boyle</u> test" when moving for summary judgment. <u>Sebright</u> v. <u>Gen. Elec. Co.</u>, 525 F. Supp. 3d 217, 252 (D. Mass. 2021).

**1.    Failure to Warn**

As confirmed by the First Circuit, a defendant asserting the government contractor immunity defense in a failure to warn case must satisfy three criteria:

(1)  the government exercised its discretion and approved certain warnings;

(2)  the contractor provided the warnings required by the government; [and]

> (3)   the contractor warned the government about
>       dangers in the equipment's use that were known to
>       the contractor but not to the government.

Moore, 25 F.4th at 37 (quoting Sawyer v. Foster Wheeler LLC, 860 F.3d 249, 256 (4th Cir. 2017)).

In the case at bar, John Crane satisfies the third prong, because evidence from both parties demonstrates that the Navy had been aware since the 1920s that asbestos was dangerous while plaintiffs are unable to produce evidence of John Crane's knowledge prior to 1943. See Moore, 25 F.4th at 37 ("[T]he government knew more than [defendant] about asbestos-related hazards and safety measures."). There are, however, genuine issues of material fact as to the first and second prongs: whether the Navy exercised its discretion and approved certain warnings and whether John Crane provided the required warnings.

John Crane maintains that there is no factual dispute as to whether the Navy exercised its discretion to approve certain warnings, stating that both parties agree that the Navy had a "warnings program" in place.  There remain, however, factual discrepancies as to whether warning labels specific to asbestos were prohibited under the Navy's reasonably precise specifications for warnings.

Both parties offer evidence in the form of their experts' divergent interpretations of MIL-STD-129, a Department of

Defense Military Standard that provides guidance for the uniform marking of military supplies and equipment for shipment and storage.  John Crane emphasizes that MIL-STD-129 never specified an asbestos warning during the relevant years in this case. Furthermore, John Crane's expert, Captain Margaret McCloskey, testified that vendors were prohibited from providing any warnings about products without the express authorization of the Navy.

The Pritts, however, stress that MIL-STD-129 directs vendors to use the Manufacturing Chemists Association's non-comprehensive Manual L-1 when labeling products with warnings. That manual required manufacturers to warn about materials dangerous in dust form, defining dust to include rock and ore. Asbestos dust is derived from rock or ore, so the Pritts contend that the Navy did require asbestos warning labels.  Furthermore, because the manual was non-comprehensive, the Pritts allege that John Crane was not prohibited from including such a warning on its products.  Moreover, the Pritts' expert, Captain Francis Burger, testified that the Navy encouraged and required manufacturers to warn about dangerous parts of their products.

Although MIL-STD-129 evinces that the Navy promulgated some form of labeling requirements, there is a genuine issue of material fact as to whether the Navy required asbestos warnings

or prohibited additional warnings.  See Moore, 25 F.4th at 37
(clarifying that "whether or not the government prohibited
[defendant] from posting additional warnings speaks to the
merits of the defense").  Without resolving which warnings the
Navy approved, it is not possible at this juncture to determine
if John Crane, in fact, provided the approved warnings.

Thus, because John Crane is unable to demonstrate there is
no genuine issue of material fact as to the first two prongs of
the government contractor defense, summary judgment is
unwarranted on the failure to warn claim.

### 2.  Design Defect

When asserting the government contractor defense to a
design defect claim, the defendant must demonstrate:

(1)  the United States approved reasonably precise
     specifications;

(2)  the equipment conformed to those specifications;
     and

(3)  the supplier warned the United States about the
     dangers in the use of the equipment that were
     known to the supplier but not to the United
     States.

Boyle, 487 U.S. at 512.

Defendant asserts that the Pritts did not plead a design
defect claim in their amended complaint but that even if they

- 9 -

did, John Crane would still be entitled to summary judgment.
The Court disagrees.

Just as with the failure to warn claim, defendant satisfies
the third prong of the Boyle test because the evidence
demonstrates that the Navy was aware of the dangers of asbestos
before its contractor was.  As for the first two prongs,
however, the parties' experts dispute whether the MIL-SPECS for
gaskets and packing explicitly require asbestos in their
composition.

John Crane argues with the support of testimony from
Captain McCloskey that the MIL-SPECS approved by the Navy are
reasonably precise and that John Crane's products conformed to
those specifications.  In response, the Pritts submit that (1)
the MIL-SPECS do not necessarily require the use of asbestos and
(2) the purported design defect is not that the gaskets and
packing contained asbestos but rather that those products have
the propensity to release asbestos dust.  Because the Pritts'
amended complaint fails to mention that the propensity to
release asbestos dust is the defect, the Court will focus on the
first claim.

The MIL-SPEC for gaskets, MIL-A-17472A, titled "Asbestos
Sheet, Compressed (Gasket Material)," states that the sheet
material for the gaskets

> shall be made of asbestos fiber, natural or synthetic
> rubber, or a mixture of the two, and suitable mineral
> fibers.

John Crane's expert Captain McCloskey contends that this means

that John Crane was required to include asbestos in the product.

Plaintiffs dispute that contention, however, suggesting that by

using the disjunctive, the MIL-SPEC permits a manufacturer to

use natural or synthetic rubber in place of asbestos or in

combination with asbestos and thus, asbestos was not required.

Next, the MIL-SPEC for packing, MIL-P-17303C, "Packing

Materials, Plastic Metallic and Plastic Nonmetallic," stated

that certain kinds of plastic, non-metallic packing shall be

composed of asbestos, among other materials.  For example, Type

C, symbol 1108

> shall be continuous strips of uniform cross section,
> completely enclosed in a braided jacket composed of
> asbestos and nickel-copper wire.

Plaintiffs' expert, Captain Burger suggests, however, that

asbestos is not actually required.  Further, the parties dispute

whether the plastic metallic packing, which does not explicitly

list asbestos as a component, in fact required asbestos.  In

light of such factual disputes, the Court is left with a jury

question as to whether the Navy promulgated reasonably precise

specifications to which John Crane conformed its products.  The

Court will therefore deny summary judgment for defendant for the

design defect claim on the basis of the government contractor defense.

###   C.   Doctrine of Derivative Sovereign Immunity

John Crane also asserts that it is entitled to derivative sovereign immunity under Yearsley v. W.A. Ross Construction Co., 309 U.S. 18 (1940).  According to that doctrine, government contractors cannot be sued if

> (1) the government authorized the contractor's actions and
>
> (2) the government validly conferred that authorization, meaning it acted within its constitutional power.

Moore, 25 F.4th at 37 (internal quotation marks omitted) (quoting Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 643 (4th Cir. 2018)).

The Pritts aptly note, however, that subsequent Supreme Court cases have imposed limits on Yearsley.  Just three years after that decision, Brady v. Roosevelt S.S. Co., 317 U.S. 575, 583-84 (1943) clarified that derivative sovereign immunity is not absolute, noting that "the liability of an agent for his own negligence has long been embedded in the law." Brady, 317 U.S. at 580; see also Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 166 (2016).

Thus, the doctrine of derivative sovereign immunity is not a viable defense to government contractors whose own negligence caused the harm. Hilbert v. Aeroquip, Inc., 486 F. Supp. 2d 135, 148 (D. Mass. 2007) (stating that government contractors cannot insulate themselves from liability under derivative sovereign immunity when "the harm was caused by the private party's own tortious conduct").  Without resolving the negligence claim, the Court cannot enter summary judgment for defendant under that defense.

**ORDER**

For the forgoing reasons, defendant's motion for summary judgment (Docket No. 49) is **DENIED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated October 21, 2022