UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RUTH A. PRITT, Individually and as
Executrix of the Estate of ARNOLD L.
PRITT,
    Plaintiff,

v.                                                   CIVIL ACTION NO.
                                                     20-12270-NMG
JOHN CRANE INC.,
    Defendant.

**MEMORANDUM AND ORDER RE:**
**PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**
**(DOCKET ENTRY # 107)**

**July 11, 2023**

**BOWLER, U.S.M.J.**

Pending before this court is a motion for leave to file a second amended complaint filed by plaintiff Ruth A. Pritt ("plaintiff" or "Ruth Pritt"). (Docket Entry # 107). Plaintiff requests leave under Fed. R. Civ. P. 15(a)(2) ("Rule 15(a)(2)") to clarify her strict liability claims as well as add claims for wrongful death and punitive damages. Defendant John Crane Inc. ("defendant") opposes the motion to amend. (Docket Entry # 112).

Specifically, and on the basis of futility, defendant opposes plaintiff's request for leave to amend the complaint to pursue and include certain damages: (1) pain and suffering damages and medical expenses because they are available only in

a survival action and general maritime law does not recognize a survival claim seeking to recover such damages; and (2) loss of consortium damages and punitive damages under the wrongful death claim because these nonpecuniary damages are not available under general maritime law.  (Docket Entry # 112).

After conducting a hearing on May 23, 2023, this court took the motion (Docket Entry # 107) under advisement.[1]  A jury trial is set for December 4, 2023.  (Docket Entry # 231).

<u>BACKGROUND</u>

Ruth Pritt and her late husband, Arnold Pritt, ("plaintiffs") commenced this action by filing a complaint in Massachusetts Superior Court (Middlesex County) against

---

[1] During the motion hearing, this court *sua sponte* raised the issue of delay.  Both parties were asked if more time would be needed for discovery should the motion to amend (Docket Entry # 107) be allowed.  Plaintiff's counsel stated "only that we -- we would -- you know, we plan on amending the expert report to just make clear that there's a wrongful death claim . . . . I don't think we would have any other discovery."  (Docket Entry # 232, p. 14).  Defendant's counsel replied, "I don't know whether and to what extent we have explored issues of pain and suffering with the treating doctors.  I don't know if we had explored with the widow, with the family members those -- let's call them the nonpecuniary issues."  (Docket Entry # 232, p. 27).  The court then asked  defendant's counsel if plaintiff's deposition was taken, and plaintiff's counsel confirmed that it was.  The defendant's counsel added that "most of those issues were explored with the family."  (Docket Entry # 232, p. 28).  The court further asked, "So basically those -- those areas were explored?"  (Docket Entry # 232, p. 28).  Defendant's counsel responded, "[G]enerally speaking, your Honor[,] I would agree with that."  Docket Entry # 232, p. 28).  Accordingly, because neither party raised any concern about delay, it does not materially factor into the adjudication of the motion to amend.

defendant and several other companies on November 18, 2020.
Defendant then removed the action to this court on December 22,
2020.  (Docket Entry # 1).  Following the December 26, 2022
death of Arnold Pritt, plaintiff filed the motion to substitute
the parties and for leave to file a second amended complaint.
(Docket Entry # 107).  The unopposed motion to substitute was
allowed on March 30, 2023.  (Docket Entry # 108).

The original complaint raised the following causes of
action against defendant:  (1) negligence (Count I); (2) breach
of express and implied warranties (Count II); and (3) loss of
consortium (Count III).  (Docket Entry # 1-3).  Plaintiffs filed
a first amended complaint solely against defendant in April
2021, which added design defect claims to the negligence and
breach of warranty counts.  (Docket Entry # 20).  Plaintiff now
seeks leave to amend the first amended complaint ("the
complaint").  The proposed second amended complaint sets out:
(1) a design defect negligence claim (Count I); (2) a design
defect strict liability claim (Count II); (3) a failure to warn
negligence claim (Count III); (4) a failure to warn strict
liability claim (Count IV); (5) a breach of implied warranties
claim (Count V); (6) a breach of express warranties claim (Count
VI); (7) a spousal pre-death loss of society and consortium
claim (Count VII); (8) a wrongful death design defect claim
(Count VIII); (9) a wrongful death failure to warn claim (Count

3

IX); (10) a wrongful death breach of implied and express warranties claim (Count X); and (11) a wrongful death claim based on the death of plaintiff's husband due to complications from mesothelioma (Count XI).  (Docket Entry # 107-3).  The proposed second amended complaint also includes a separate count for punitive damages under chapter 229, section two, of Massachusetts General Laws ("Massachusetts wrongful death statute") (Count XII).  (Docket Entry # 107-3).

As previously indicated, defendant does not specifically challenge *each* of the 12 causes of action plaintiff seeks to add to the complaint.  Rather, defendant seeks to prevent plaintiff from adding:  (1) the survival remedies for pain and suffering and medical bills; and (2) the loss of consortium and society damages as well as punitive damages under the wrongful death claim.  In particular, defendant therefore seeks to preclude the foregoing damages that are "alleged in paragraphs 28, 33, 40, 47, 55, 62, 72 [and] 79," as well as to preclude "the entirety of Counts VII (loss of society/consortium) and VII [sic][2] (punitive damages)."  (Docket Entry # 112, p. 2, fn. 2).

---

[2] This court assumes this reference to "Count VII (punitive damages)" is meant to refer to the punitive damages count, i.e., Count XII.

DISCUSSION

A.  Standard of Review

Rule 15(a)(2) states that a party may only amend its pleading with the opposing party's written consent or the court's leave.  The rule instructs that leave is freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  Absent an "apparent or declared reason-such as undue delay, bad faith," or futility of amendment - "the leave sought should be . . . 'freely given.'"  Foman v. Davis, 371 U.S. 178, 182 (1962) (citation omitted).  Defendant opposes the amendment on the ground that the amendment of the complaint to include survival remedies, loss of consortium damages, and punitive damages under plaintiff's wrongful death claim is futile because these claims are not recoverable under general maritime law.  (Docket Entry # 112, p. 2).

In assessing futility, the court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  Adorno v. Crowley Towing and Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).  "Futility," in this sense, means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  When determining whether a proposed amendment would be futile, there is no practical difference between a denial of a motion to amend

based on futility and the grant of a motion to dismiss for

failure to state a claim.  Id.

To survive a Rule 12(b)(6) motion to dismiss, the complaint

must include factual allegations that, when taken as true,

demonstrate a plausible claim to relief "even if . . . actual

proof of [the] facts is improbable." Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 556 (2007).  If the complaint fails to

conform to the applicable governing law, such as seeking damages

that are not available, then a court may deny a motion for leave

to amend a complaint as futile.  See Holbrook v. Boston Sci.

Corp., 487 F. Supp. 3d 100, 111 (D. Mass. 2020).

In determining whether an amendment is futile, this court's

review is confined to the proposed amended complaint and the

attached documents (Docket Entry # 107-3), as well as external

documents that fall into certain narrow exceptions applicable to

review of a Rule 12(b)(6) motion to dismiss.  See Jaundoo v.

Clarke, 690 F. Supp. 2d 20, 22 (D. Mass. 2010) (quoting Alt.

Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33

(1st Cir. 2001)).  Under these exceptions, this court may

consider extrinsic documents such as "'documents the

authenticity of which are not disputed by the parties; . . .

official public records; . . . documents central to the

plaintiff's claim; [and] . . . documents sufficiently referred

to in the complaint' without turning the 12(b)(6) motion into a

motion for summary judgment." Newman v. Lehman Bros. Holdings
Inc., 901 F.3d 19, 25 (1st Cir. 2018) (quoting Freeman v. Town
of Hudson, 714 F.3d 29, 36 (1st Cir. 2013)). As such, futility
of the proposed amendment will be considered in light of the
proposed complaint and those documents that fit within a
recognized exception.

B.  Jones Act and Death on the High Seas Act Applicability

Plaintiff argues that the Jones Act, 46 U.S.C. § 30104
("The Jones Act"), and the Death on the High Seas Act, 46 U.S.C.
§§ 30301-30308 ("DOHSA") do not apply. Specifically, the Jones
Act does not apply because defendant was not the employer of
plaintiff's late husband ("decedent") and DOHSA does not apply
because decedent's injuries were indivisible. (Docket Entry #
220). Plaintiff therefore reasons that general maritime law
applies. Moreover, in contrast to defendant's arguments,
plaintiff maintains that general maritime law allows for
punitive damages, loss of consortium damages as well as survival
damages for decedent's pre-death pain and suffering and medical
expenses. Further, because the Jones Act and DOHSA do not
apply, state law can fill in the gaps, according to plaintiff.
(Docket Entry # 220). Defendant argues that "because both
[DOHSA] . . . and the Jones Act preclude recovery of loss of
society damages and punitive damages," those damages "are not
available." (Docket Entry # 112, p. 3). Defendant also argues

7

that general maritime law does not recognize a survival claim seeking to recover pain and suffering damages and medical expenses and nonpecuniary damages in a wrongful death claim. (Docket Entry # 112).  Relatedly, neither the complaint nor the proposed amended complaint includes a Jones Act or DOHSA claim. As previously stated, the proposed complaint seeks to clarify plaintiff's strict liability claims and add causes of action which encompass survival remedies, as well as loss of consortium damages and punitive damages under a wrongful death claim. (Docket Entry # 107-3).

The Jones Act states that "a seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law . . . *against the employer*."  46 U.S.C. § 30104 (emphasis added).  The legislative history makes clear that Congress intended to limit claims brought under the Jones Act to employers.  H.R. Rep. No. 109-170, at 40 (2006) (stating that "the words 'against the employer' are added for clarity").  The Jones Act grants seamen a cause of action against their employer "based on violations of the special standard of negligence that has been imposed under the Federal Employers' Liability Act," ("FELA").  See Moragne v. States Marine Lines, 398 U.S. 375, 407 (1970).  Accordingly, the Jones Act does not apply because the proposed amended complaint is filed against defendant, a product

manufacturer, not the decedent's former employer, the United States Navy.

DOHSA allows the personal representative of the decedent to bring a civil action in admiralty against the person or vessel responsible for "the death of an individual caused by [a] wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302.  Courts have established that when "a seaman dies from an indivisible injury which occurred both in territorial waters and on the high seas, *Dooley*'s[3] prohibition on survival actions in DOHSA cases does not apply and the plaintiff may pursue a survival action under general maritime law."  Bell v. Foster Wheeler Energy Corp., No. 15-6394, 2017 WL 889074, at *3 (E.D. La. Mar. 6, 2017).

In applying this standard to the facts of the case at bar, the death of plaintiff's husband ("the decedent") was from an indivisible injury.  Decedent testified during his deposition that he would spend roughly 80% of his time at sea, with the other 20% spent at ports around the world, including the ship's home port in Rhode Island.  (Docket Entry # 112-4).  Neither party points to a definitive moment when decedent was exposed to the asbestos containing products and courts have previously

---

[3] Dooley v. Korean Air Lines Co., Ltd., 524 U.S. 116 (1998).

applied general maritime law, not DOHSA, to allow survival claims where the decedent's asbestos exposure occurred both in territorial waters and on the high seas.  See Hays v. John Crane, Inc., No. 09-81881, 2014 WL 10658453, at *2 (S.D. Fla. Oct. 10, 2014) (finding no case that has held that DOHSA restricts recoverable damages for indivisible injury when exposure to asbestos-containing products occurred on high seas and in territorial waters); John Crane, Inc. v. Hardick, 732 S.E.2d 1, 3 (Va. 2012).

In sum, because both the Jones Act and DOHSA do not apply, general maritime law and its applicable forms of recovery provide the backdrop to assess whether the amendment of the complaint is futile.

C.   Punitive Damages and Loss of Consortium under General Maritime Law

"By granting federal courts jurisdiction over maritime and admiralty cases, the Constitution implicitly directs federal courts sitting in admiralty to proceed 'in the manner of a common law court.'"  Dutra Grp. v. Batterton, 139 S. Ct. 2275, 2278 (2019) (quoting Exxon Shipping Co. v. Baker, 554 U.S. 471, 489-90 (2008)).  When specific rules are not prescribed, "federal courts must develop the 'amalgam of traditional common-law rules, modifications of those rules, and newly created rules' that forms the general maritime law."  Batterton, 139 S.

Ct. at 2278 (citing East River S.S. Corp. v. Transamerica Delaval Inc., 476 U.S. 858, 864-65 (1986)).  To further the development of this area of the law, this court looks to contemporary cases for uniformity, a central goal of admiralty law.  See Moragne, 398 U.S. at 400 (discussing uniformity).

A similar set of facts has been found in Pritt v. Air & Liquid Sys. Corp., No. 19 Civ. 10651, 2022 WL 902684 (S.D.N.Y. Mar. 28, 2022) ("the New York action" or "the New York court"). In the New York action, the same plaintiffs who brought the above captioned case, filed suit against Air & Liquid Systems Corporation and General Electric Company ("GE") (collectively "New York defendants").  Plaintiffs filed the original complaint in the case at bar against the New York defendants as well as defendant.  Much like in the instant case, plaintiffs filed suit in the New York action against the New York defendants, alleging that their products caused the decedent to contract mesothelioma during his time serving in the United States Navy.  Pritt, 2022 WL 902684, at *1.  Following a procedural history that nearly mirrors the procedural history of this case, GE filed a motion for summary judgment.  Id. at *1.  In its motion for summary judgment, GE argued that summary judgment should be entered on plaintiffs' loss of consortium and punitive damages claims because maritime law does not recognize such claims.  Id. at *18.  The New York court denied GE's motion for summary judgment

on those claims, holding that maritime law permits the recovery of loss of consortium and punitive damages.  Id.

The New York decision is not one that runs afoul of tradition in general maritime law.  Multiple courts conclude that punitive damages have been historically available under general maritime law.  See Morgan v. Almars Outboards, Inc., 316 F. Supp. 3d 828, 841 (D. Del. 2018); see also Atl. Sounding Co. v. Townsend, 557 U.S. 404, 407 (2009) (finding that "[h]istorically, punitive damages have been available and awarded in general maritime actions").  It is the same for loss of consortium claims.  Courts have found that "loss of consortium damages have long been available at common law, and that the common-law tradition allowing recovery for loss of consortium extends to general maritime claims."  Barrette v. Jubilee Fisheries, Inc., No. C10-01206, 2011 WL 3516061, at *6 (W.D. Wash. Aug. 11, 2011); see Cutting v. Seabury, 6 F. Cas. 1083, 1084 (D. Mass. 1860) (No. 3521) (holding that father, who lost son during a whaling voyage, may maintain action for loss of consortium); accord New York & Long Branch Steamboat Co. v. Johnson, 195 F. 740, 742 (3d Cir. 1912) (finding that husband suing for loss of consortium due to injuries suffered by wife on defendant's steamship may recover).

Defendant cites Dutra Grp. v. Batterton, 139 S. Ct. 2275 (2019), arguing that applying the case's three-prong test "leads

12

inexorably to the same conclusion that Plaintiff is not entitled to recover pain-and-suffering damages or medical expenses in this case." (Docket Entry # 112, p. 9). The three-prong test analyzes whether to allow a remedy sought by looking at: (1) whether such a remedy has "traditionally been awarded" for such claims; (2) "whether conformity with parallel statutory schemes would require such damages"; and (3) whether policy grounds would compel recognition of the right to recover the damages sought. Batterton, 139 S. Ct. at 2283.

In applying this test to the facts at hand, this court finds that these remedies may be allowed. First, other courts have found that these remedies have been traditionally awarded for such claims. See Townsend, 557 U.S. at 407 (finding that "[h]istorically, punitive damages have been available and awarded in general maritime actions"); Barrette, 2011 WL 3516061, at *6 (stating that "loss of consortium damages have long been available at common law, and that the common-law tradition allowing recovery for loss of consortium extends to general maritime claims").

Second, while it is true that parallel statutory schemes, namely the Jones Act and DOHSA, do not allow such damages,[4]

---

[4]  Under the Jones Act and DOHSA, non-pecuniary damages are not allowed. See Dooley, 524 U.S. at 118 (stating that "[i]n a case of death on the high seas, [DOHSA] . . . allows certain

13

policy grounds may compel recognition of the right to recover the damages sought.  In <u>Batterton</u> the Court held that punitive damages are not available for general maritime unseaworthiness claims.  <u>Batterton</u>, 139 S. Ct. at 2287.  The Court reasoned that the vessel owner and the mariner share the same interests "because there are significant economic incentives to ensure that the vessel is seaworthy."  <u>Id.</u> at 2286.  In general maritime maintenance and cure claims, which allow for punitive damages, the vessel owner and master have "just about every economic inventive to dump an injured seaman in a port and abandon him to his fate."  <u>Id.</u>  Plaintiff in the instant case does not pursue maintenance and cure or unseaworthiness claims. In applying the <u>Batterton</u> Court's reasoning to the claims at hand, defendant, a product manufacturer, does not share the same incentives as a vessel owner in an unseaworthiness action. Defendant has no economic motivation to care for seamen who

---

relatives of the decedent to sue for their pecuniary losses, but does not authorize recovery for the decedent's pre-death pain and suffering"); <u>Martin v. Harris</u>, 560 F.3d 210, 219 (4th Cir. 2009) (saying that "[t]he Jones Act incorporates . . . the rights and remedies afforded railroad employees under the FELA . . . . the Supreme Court has held that the Jones Act incorporates not only the statutory provisions of FELA, but also 'the entire judicially developed doctrine of liability under the [FELA]") (citations omitted); <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 32, (1990) (finding that "[by] [i]ncorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well . . . . [t]here is no recovery for loss of society in a Jones Act wrongful death action") (citations omitted).

encounter products after they have been sold.  Policy grounds
would compel this recognition because the situation presented by
the case at bar is more akin to a maintenance and cure claim
than an unseaworthiness claim.

Defendant heavily relies on two authorities to bolster its
argument that neither loss of consortium claims nor punitive
damages are available under general maritime law.  (Docket Entry
# 112).  First, defendant cites Horsley v. Mobil Oil Corp., 15
F.3d 200 (1st Cir. 1994).  Defendant states, "In *Horsley*, the
First Circuit applied *Miles* and held that neither loss-of-
society/consortium nor punitive damages were available to an
injured seaman or his family."  (Docket Entry # 122, p. 17).
Defendant's reliance on Horsley is misplaced.  The Horsley court
decided "whether either punitive damages or damages for loss of
parental and spousal society allegedly caused by a nonfatal
injury aboard a vessel in territorial waters are recoverable in
an *unseaworthiness* action under the general maritime law."
Horsley, 15 F.3d at 200 (emphasis added).  An unseaworthiness
action is decidedly different from the action in the case at
bar.  An action for unseaworthiness "is a cause of action that
enforces the *shipowner's* absolute duty to provide to every
member of his crew 'a vessel and appurtenances reasonably fit
for their intended use.'"  Poulis-Minott v. Smith, 388 F.3d 354,
365 (1st Cir. 2004) (emphasis added) (citations omitted)).

15

Plaintiff does not and cannot allege an unseaworthiness claim against defendant because defendant is not the shipowner and defendant had no absolute duty to provide a seaworthy vessel to decedent.  As a result, the holding reached by the First Circuit in Horsley is inapplicable.

Defendant also cites Sebright v. Gen. Elec., 525 F. Supp. 3d 217 (D. Mass. 2021).  But Sebright is about a living plaintiff and never addressed whether the identity of the defendant should matter.  Id. at 223.  Sebright also relied heavily on Horsley and Miles.  Id. at 250-51.  As previously discussed, Horsley was decided in an unseaworthiness action, an action that plaintiff in the present does not and cannot bring. Horsley, 15 F.3d at 200.  Similarly, Miles decided an action that was brought by a seaman under the Jones Act.  Miles v. Apex Marine Corp., 498 U.S. 19 (1990).  Miles was a case brought by a murdered seaman's mother against the vessel's operators, the charterer, and the owner of the vessel.  Miles, 498 U.S. at 19. The mother, acting as executrix of her son's estate, brought suit alleging negligence under the Jones Act and breach of the warranty of seaworthiness under general maritime law.  Id. Consistent with its previous cases, the Supreme Court held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman."  Id. at 33.  When there is an overlap between statutory and decisional

law <u>Miles</u> may be applicable in those areas of maritime law. <u>CEH, Inc. v. F/V Seafarer</u>, 70 F.3d 694, 701 (1st Cir. 1995). However, "*Miles* does not mandate a uniform result for every maritime action."  <u>Id.</u> at 702.

The instant case is more analogous to <u>Sugden v. Puget Sound Tug & Barge Co.</u>, 796 F. Supp. 455 (W.D. Wash. 1992), than the two cases relied upon by defendant.  In <u>Sugden</u>, the estate and surviving family members of Kenneth Sugden brought a wrongful death action seeking non-pecuniary damages against a non-employer defendant, Duwamish Shipyard ("Duwamish").  <u>Id.</u> at 456. Duwamish installed a "moon pool" on a barge that Sugden was tugging during the scope of his employment.  <u>Id.</u>  Sugden apparently fell into the moon pool and drowned.  <u>Id.</u>  Sugden's estate sought non-pecuniary damages from only Duwamish under general maritime law.  <u>Id.</u>  The court held that Sugden was, in effect, not a Jones Act seaman and thus Duwamish's motion *in limine* dismissing the estate's non-pecuniary claims was denied. <u>Id.</u> at 457.

In the case at bar, there is no overlap between statutory and decisional law.  Plaintiff's case is more factually comparable to <u>Sugden</u> than it is to <u>Horsley</u> or <u>Miles</u>.  Plaintiff brings wrongful death claims, seeking punitive damages and loss of consortium damages, as well as survival remedies as executrix of her late husband's estate.  She is suing a product

17

manufacturer who was not the employer of her late husband, who died from an indivisible injury occurring both on the high seas and in territorial waters.  These facts make the Jones Act and DOHSA inapplicable.  Additionally, in no pleadings does plaintiff allege a cause of action based on the Jones Act, DOHSA, or general maritime unseaworthiness.  This differentiates the reasoning of this court from the reasoning found in Horsley, Sebright, and Miles.  None of the limits to recovery found in Horsley, Sebright, and Miles applies and this court finds the reasoning of the Pritt and Sugden courts persuasive.  Moreover, plaintiff in the case at bar prevailed in another jurisdiction wherein the New York court determined that maritime law permits the recovery of loss of consortium and punitive damages.  Pritt, 2022 WL 902684, at *18.

In reviewing the proposed amended complaint in conjunction with the aforementioned cases, this court is convinced that punitive damages and loss of consortium damages may be available to plaintiff.  The Supreme Court has noted that "it is a settled canon of maritime jurisprudence that 'it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.'"  American Export Lines, Inc. v. Alvez, 446 U.S. 274, 281-82 (1980).  Furthermore, this court finds no established and inflexible rules that would convince it

18

to withhold the remedies sought by plaintiff under the
Massachusetts wrongful death statute.[5]

D.   <u>Survival Remedies under General Maritime Law</u>

Plaintiff seeks leave to amend the complaint and bring a
survival action against defendant.   (Docket Entry # 107-3).
Defendant argues that the Supreme Court "has **never** recognized a
survival remedy under general maritime law."   (Docket Entry #
112, p. 2).   Defendant further argues that "[b]ecause a survival
remedy has never been recognized under general maritime law,
Plaintiff's attempt to assert one here is futile" and "leave to
assert one should be denied under FRCP 15(a)(2)."   (Docket Entry
# 112, p. 3).

"Under a survival action, the decedent's representative
recovers for the decedent's pain and suffering, medical
expenses, lost earnings (both past and future), and funeral
expenses." <u>Calhoun v. Yamaha Motor Corp.</u>, 40 F.3d 622, 637 (3d
Cir. 1994) (citing <u>Sea-Land Services, Inc. v. Gaudet</u>, 414 U.S.
573, 575 n.2 (1974)).   Courts have previously recognized

---

[5] Plaintiff's suit satisfies the recently clarified requirements
of a wrongful death claim under Mass. Gen. Laws ch. 229, § 2.
<u>See</u> <u>Fabiano v. Philip Morris USA Inc.</u>, No. SJC-13282, 2023 WL
4359428, at *21 n.16 (Mass. Jul. 6, 2023) (holding that "the
statute of limitations for the underlying claim must not have
expired at the time of the decedent's death").   Plaintiff's
wrongful death claim is derivative of decedent's underlying
personal injury claim and was brought within the statute of
limitations.

survival remedies as recoverable under general maritime law.
Spiller v. Thomas M. Lowe, Jr. & Assocs., Inc., 466 F.2d 903,
909 (8th Cir. 1972).  In Spiller, parents and stepchildren of
decedents that drowned when their boat sank in navigable waters
brought suit seeking damages for mental anguish suffered by
decedents before their death.  Id. at 904-05.  The court found
that since Moragne a growing body of law has recognized that as
a logical extension of Moragne, which established a federal
right of action for wrongful death, the decedents' claim for
pain and suffering should survive.  Id. at 909.  The Spiller
court points out an anomaly that could arise should a court deny
a survival action under general maritime law.  Id.
Specifically, it notes that "the result would be that the
decedent's family would thus be forced to lose that which the
decedent could himself have collected had he filed a suit and
prosecuted it to judgment during his life."  Id. (citing Dennis
v. Central Gulf S.S. Corp., 323 F. Supp. 943, 949 (E.D. La.
1971)).

This court finds the Spiller court's reasoning persuasive.
When considering the facts at hand, an anomaly would be created
by recognizing that plaintiff may recover punitive damages or
loss of consortium damages under a wrongful death claim, but
that she may not recover survival damages as executrix of the
estate of her late husband.  It makes little sense to recognize

20

plaintiff's right to wrongful death damages but strip her of the rights that were afforded to her husband prior to his death.

Defendant cites to Miles v. Apex Marine Corp., 498 U.S. 19 (1990), in which the Supreme Court states that "[u]nder traditional maritime law, as under common law, there is no right of survival; a seamen's personal cause of action does not survive the seaman's death." Id. at 33.  However, the Supreme Court continues in its opinion, acknowledging cases in which several Courts of Appeals have held that there is a general maritime right of survival, such as Spiller.  Id. at 34.  The Court further states that "Miles argues that we should follow the Courts of Appeals and recognize a general maritime survival right.  Apex urges us to reaffirm the traditional maritime rule and overrule these decisions.  We *decline* to address the issue, because its resolution is unnecessary to our decision." Id. (emphasis added).  This is a distinct difference from what defendant argues.  The Supreme Court is not creating a steadfast rule, it does not address the issue of whether there is a right of survival under traditional maritime law.

It would be incongruent for this court to grant plaintiff the right to seek punitive damages and loss of consortium damages, but simultaneously take away the rights afforded to her late husband prior to his death.  As a result, this court is

convinced that under general maritime law survival remedies may be available to plaintiff under the circumstances of this case.

<u>CONCLUSION</u>

In accordance with the foregoing discussion, the motion to amend (Docket Entry # 107) is **ALLOWED.**


<u>/s/Marianne B. Bowler</u>
**MARIANNE B. BOWLER**
United States Magistrate Judge